R. D. RHYNE, *v.* G. M. McKEE.

An execution issuing from the Supreme Court, upon a judgment obtained therein, to a county in which the defendant has land, is a lien, upon the land from its *teste.*

MOTION in the cause heard before *Schenck, J.,* at Spring Term, 1875, LINCOLN Superior Court.

The following are all the facts necessary to an understanding· of the case, as decided in this court :   At Spring Term, 1873,. of Lincoln Superior Court, the defendant obtained a judgment against one Jacob Lineberger.   From this judgment there was an appeal to the Supreme Court, but no bond was filed to stay execution.

At June Term, 1873, the Supreme Court affirmed this judgment, and execution was issued thereupon, returnable to the,

next term of the Supreme Court. The appeal was docketed at the commencement of the term, and execution actually issued on the 1st day of August, 1873.

One James Wright obtained a judgment against Line-berger, in a Magistrate's Court, and docketed the same in the Superior Court of Gaston County on the 28th day of August, 1873, and execution issued thereupon on the same day.

The sheriff of Gaston County, R. D. Rhyne, had executions on both of these judgments in his hands at the time he levied on the land and sold under them. At this sale the defendant in this suit (the plaintiff in execution) became the purchaser. He failed to pay the purchase money, and was sued by the plaintiff in this action, and judgment was obtained against him at Spring Term, 1875, Gaston Superior Court.

The defendant thereupon moved the Court to have his judgment against Lineberger credited with the amount of his bid, with the exception of the cost of the suit and the Sheriff's commissions, and to stay the execution of the plaintiff to that amount.

The Sheriff and James Wright, who were notified, resisted the motion on the ground that the Magistrate's judgment, docketed as aforesaid, has priority, and should be first paid, and the balance, if any there be, applied to the payment of McKee's judgment.

The Court refused the motion, and the defendant appealed.

*J. F. Hoke*, for appellant.
*B. C. Cobb*, contra.

RODMAN, J. The only question in this case is, whether an execution issuing from this Court upon a judgment obtained therein to a county in which the defendant has land is a lien upon the land from its teste? A lien is a right to hold, or to sell, property in satisfaction of a debt. It is property itself, and cannot be arbitrarily divested. That such was the law before the enactment of C. C. P. cannot be doubted. It has not been

changed by sections 252, 253 and 254 of C. C. P. because these, by their terms, are confined to the Superior Courts; nor by any other legislation; and is recognized as existing, by rule 9, of June Term, 1868, of this Court. The only argument which can be advanced against the present existence of the former law is *ab inconvenienti*, an argument which we have repeatedly said, in- questions of mere practice, " availeth much." It is argued that the same reasons which induced the enactment that judgments of the Superior Courts should be a lien on the land of the defendants from the time of docketing in the county, and not before, apply to judgments in the Supreme Court. The law should be extended by analogy to all Courts. Thus an intended purchaser would be able by inquiry in a single county, to inform himself of all incumbrances. Whereas by a different construction, he will be compelled to search the records of this Court also, not only for judgments, but also for actions pending, which for ought he can know, may be reduced to judgment, upon which an execution may issue, ante-dating his purchase, and creating a prior incumbrance. Under the old law a purchaser could not be sure of getting a title clear of incumbrances, without examining the records of every Court in the State, both State and Federal, including the Supreme Court. Confessedly the new law is a great improvement, even if it goes no farther than all agree that it does; that is to say, if it is confined to the Superior Courts, and if the purchaser must still search the records of the Supreme Court. It cannot be denied that this argument has a certain weight. But let us hear the other side, and consider the inconveniences of extending the new law to the Supreme Court, and of holding that its judgments create no lien on land until docketed in the county. The judgments of this Court, for the purpose of the present discussion, may be divided into two classes.

1. The Court wholly or in part affirms the judgment of the Court below, that a plaintiff or defendant, as the case may be, recover of the other, a sum of money. In that case there is no *new* judgment of this Court, (by which I mean that there is

not a judgment of this Court to all purposes, but only that it is an affirmatory judgment,) except for the costs of its clerk. The party in whose favor the judgment was below, had a right to docket it in any county, and as a judgment is not now vacated by an appeal, upon the *affirmance* of the judgment in the Supreme Court, his lien dates from the docketing of the judgment below. If the affirmance be in part only, and the judgment in the Supreme Court be for less than the judgment below, then the latter stands only to the extent to which it was affirmed. If the party who obtains judgment below, neglects to docket it in any county, (as the defendant in this case neglected), then, upon obtaining judgment in the Supreme Court, he will clearly have no lien prior to the *teste* of his execution from that Court, and will come within the second class, which I proceed to notice.

2. There are cases in which this Court, under its duty to give such judgment, as upon the record, it appears that the Court below should have given, gives judgment that plaintiff or defendant recover a sum for which he did not have a judgment below, which he might have docketed, and thereby have secured a lien from that time. These may be called *new* judgments. On the same footing with these, and within the same reasons, stand all the judgments of this Court for its own costs; they are judgments not in affirmance of one below.

It will be seen that the question we are discussing, has no bearing on the first class, of what may be called *affirming* judgments, unless the successful party by his neglect to docket his judgment, (as in this case,) has put himself in the second class of *new* judgments.

In this class the party successful in this Court was of right entitled to judgment in the Court below. He failed to obtain it through an error of the Court. He has, in any event, lost the lien which he might have acquired if the Court below had decided correctly. Shall he be put to the inconvenience, expense, and delay of keeping an agent here until the Court shall have given judgment in his case, and of then docketing the

judgment in the proper county, getting the lien *from that time,* which he ought to have had before? We cannot give him priority of lien from the time when rightfully he was entitled to it; but there is no law that forbids us to give him a lien by relation from the time when his appeal is, or is supposed to be, docketed in this Court.

The rule contended for by plaintiff would be a serious inconvenience to suitors, and especially to those who recovered the costs of this Court only. The course of this Court will not usually permit a judgment to be put in form for docketing very speedily after it has been pronounced. To docket every judgment would add to the labor and costs of suitors, it seems to us, unnecessarily. It is unnecessary to go further into details. The experience of every lawyer, upon reflection, will supply them. These inconveniences, we consider, overbalance those of the supposed purchaser, who can protect himself by a not immoderate degree of diligence. We do not wish to be understood as making a new rule of Court by holding as we do. We conceive that rules of Court should be always prospective, and affect only cases arising after their promulgation. We have endeavored, in the first place, to ascertain the law of the case from existing authorities, and as to the conclusion from them there can be but little doubt. And upon considering the question in the light of public convenience, we can see no sufficient reason to change it, if we felt at perfect liberty to do so.

As the land was sold under both executions, there is no question as to title of the purchaser.

We think the defendant was entitled to priority in the appropriation of the proceeds of the sale, and a judgment may be drawn here in conformity to this opinion.

PER CURIAM: Judgment below reversed, and judgment here for defendant in conformity to this opinion.