### J. B. STEADMAN v. M. E. TAYLOR.

*Purchaser at Assignee's Sale—Agreement to Convey Land—Uncer-
tainty of Description—Parol Evidence—Estoppel.*

1. A purchaser at a sale by an Assignee in bankruptcy takes the estate
   of the bankrupt subject to all equities against it, and it is immaterial
   whether he knows of them or not.

2. Parol evidence is admissible to explain a *latent* ambiguity in the
   description of land contained in an agreement to convey the same;
   *Therefore*, where in such agreement the land was described as "100
   acres of land commencing at the corner I sold B, and round near W's
   including the head of the branch that runs near W's house;" *Held*,
   that parol evidence was admissible to make the description certain.

3. In such case, where the bargainor received the purchase money and
   acquiesced for five years in the possession of the bargainee, he is estop-
   ped in equity from setting up any claim to the land.

   (*Carr* v. *Fearington*, 63 N. C. 560, cited and approved.)

CIVIL ACTION to recover Possession of Land, tried at
Spring Term, 1877, of RUTHERFORD Superior Court, before
*Cloud, J.*

Both parties claimed under one John S. Ford, the grantee
of the State of seventy-three acres of land which is the sub-
ject of this controversy. Ford went into bankruptcy in
1869, and his assignee sold said land at public auction to
one Carpenter who sold to the plaintiff. The defendant re-
lied on the following paper writing executed by said Ford
on the 28th of November, 1863, before he was adjudicated a
bankrupt; "Received of Miller Taylor (defendant) $200 in
part payment for 100 acres of land commencing at the cor-
ner I sold Fayette Briscoe and round near William Splawn's."
And also the following, dated the 29th of September, 1864;
"Received of Miller Taylor $200 in payment of land on the
north side of Broad River." The evidence of Ford in re-
gard to the description of the land conveyed is sufficiently

stated in the opinion. Under the instructions of His Honor the jury rendered a verdict in favor of the defendant. Judgment. Appeal by plaintiff.

*Mr. John W. Hinsdale*, for plaintiff.
No counsel for defendant.

RODMAN, J. A purchaser at a sale by an Assignee in Bankruptcy stands on the same footing with a purchaser at execution sale. *Carr* v. *Fearington*, 63 N. C. 560.

He takes the estate of the bankrupt subject to all equities against it, and it is settled in this State, that it is immaterial whether he knows of them or not. In this case however the plaintiff had notice of the equity of the defendant. He knew that he was living on the land and that he claimed to have bought it of Ford before his bankruptcy.

Before a plaintiff can recover in what for brevity and convenience we may still call an action of ejectment, he must show a good title in himself; at least a good legal title. This it is conceded that the plaintiff has shown in this case.

The defendant sets up in his defence an equitable title under a contract by Ford to convey to him the land in controversy, and a payment in full to him some years before his bankruptcy.

The writings by which the contract is proved are imperfect and obscure in the description of the land agreed to be conveyed. In the receipt of November 28th, 1863, it is described as "one hundred acres of land commencing at the corner I sold Fayette Briscoe, and round near William Splawn's including the head of the branch that runs near Splawn's house."

The plaintiff contends that this description is so uncertain that the agreement to convey—for the receipt is by necessary intendment an agreement to convey—is void and cannot be made certain by parol evidence. The Judge below

held that the agreement was not void and that the de-
scription might be made certain by evidence outside of
the writing. In this we concur with the Judge. Evi-
dence to vary or add to the words of the writing was
clearly inadmissible and this was not proposed. Clearly
parol evidence is admissible to show that a particular object
fits the description in a writing. It may be shown where
Briscoe's corner is, and where his lines, and Splawn's house,
and the head of the branch that runs by his house, all are.
One who like myself has no knowledge of the relative situa-
tion of these objects, is unable to form any idea of the shape
of a piece of land which might be described by and upon
them. If, however, I had a map on which these points were
laid down as they exist on the face of the earth, it may be
that I could discern with certainty the boundaries of the
land which Ford agreed to convey to the defendant. Never
except where the ambiguity is patent, will the law declare a
deed void for uncertainty of description until every means
have been used to find some object which the description
fits. The parties certainly had some certain piece of land in
their minds which one intended to buy and the other to sell;
and it can rarely happen that they have not given some in-
dication by which the individuality of the piece may be as-
certained. The evidence which the Judge allowed, and the
jury thought sufficient for that purpose consisted of the tes-
timony of Ford and the circumstances of the case. Ford
testified that the land he sold to Taylor embraced the 73
acres in controversy, and that "by commencing at Briscoe's
corner and running round near William Splawn's so as to in-
clude the head of the branch that runs by William Splawn's
house, 100 acres could be laid off including the 73 acre
grant, and that this was what Taylor purchased." The cir-
cumstances tending to show that this 73 acre grant was a
part of the land, were that it was described by definite
boundaries in the grant to Ford, and that shortly after his

purchase of land from Ford, the defendant went upon this piece and built on and otherwise improved it, and remained there without any complaint from Ford, for five or six years before his bankruptcy. Ford would not have been competent to state what he *intended* to convey, and he does not appear to have been allowed to state that. It seems to us that the evidence which he gave was competent. It would have been more satisfactory if, he had shown on a map how lines, run from the points and in the manner described in the receipt, would have included the land as he says they would have done. But we cannot say that his evidence was not such as would fairly justify a jury in finding that the receipt covered the land. And if there was in a legal sense *any* evidence to support the verdict, this Court cannot grant a new trial merely upon the ground that it did not put the question beyond a reasonable doubt. We have so far considered the case as if it were in a Court of law, except that we have given to a contract to convey, the effect which a Court of law would have given to an executed conveyance of the land by the same description. But this is not all that the defendant would have been entitled to, if by proper pleading he had set up his executory title against the plaintiff as the assignee of Ford with notice, and demanded a specific performance.

It cannot be doubted that he would have been entitled to such a decree against Ford, for Ford testifies that the land in dispute was the land which he agreed to convey. It is true that Ford's statement would not have been competent against the plaintiff merely as an *admission* by Ford, because it was made after Ford had parted with his estate. But as testimony, it is competent and when it appears by any competent testimony that Ford received pay for this land and thought he sufficiently described it in his agreement to convey, and saw the defendant go into possession of it in the belief that he had a title, and improve it for five years,

.during all which time he was silent and acquiescent, it can
not be doubted that Ford would be estopped in equity from
setting up any claim to the piece of land, although by acci-
.dent it was not described in the contract so as to be identi-
fied by the description. And if Ford would be so estopped,
the plaintiff who stands in Ford's shoes is equally estopped.
No error.

PER CURIAM.                    Judgment affirmed.