WHITEHEAD & NOBLES v. LATHAM & SKINNER.

*Judgment and Execution Liens—Priorities—Constitutional Law*
*—Vested Rights.*

1. A, B and C had all taken judgments against D. A's judgment was never docketed; B's was docketed in June, 1869; C's was docketed in January, 1878. Executions issued on all these judgments bearing teste fall term, 1879; *Held,*

   (1) That A, having never docketed his judgment had no lien on the land of the judgment debtor or its proceeds under execution sale which would entitle him to compete for such proceeds with more vigilant creditors who had docketed their judgments.

   (2) That B's judgment had ceased to be a lien by the lapse of time (ten years) from the day when it was docketed.

   (3) That C's judgment should first be paid out of the proceeds of the execution sale.

2. To change the mode of acquiring a lien under an existing judgment upon the property of the debtor, (*e. g.* to substitute the lien of a docketed judgment for the lien of a *fi. fa.*) neither impairs the obligation of the contract nor violates any vested rights.

APPLICATION of the Sheriff for instructions as to application of funds, heard at Spring Term, 1880, of PITT Superior Court, before *Avery, J.*

This is an application by the sheriff of Pitt county to the judge of the superior court of that county for advice as to the disposition of a sum of three hundred and twenty-six dollars raised by him as sheriff of said county from the sale of the land of Robert Highsmith under executions issued to him, and which were in his hands and by virtue of which the land was sold. These executions were as follows:

1. A *fi. fa.* from the superior court of Pitt county bearing teste at the fall term, 1879, of said court and issued upon a judgment in favor of Brown, Cherry & Perkins to the use of Whitehead and Nobles for one hundred and seventy-five dollars with interest from the first day of November, 1867, and costs thirteen dollars and thirty-five cents, rendered against said Highsmith at the May term, 1868, of said court. This judgment was never docketed and no execution has ever issued upon the same, except the one in the hands of the sheriff when the land was sold.

2. Two *fi. fas.* from the superior court of the same county issued upon two justices judgments docketed in said county on the 29th day of June, 1869, in favor of Alfred Forbes to the use of William Whitehead, one for fifty-eight dollars and forty-eight cents subject to a credit of thirty-five dollars and forty-four cents, and for costs seven dollars and twenty-eight cents; and the other for seventeen dollars and sixty-eight cents and six dollars costs. On the 19th day of December, 1879, executions were issued upon these two judgments.

3. On the 18th day of January, 1878, L. C. Latham and

Henry Skinner recovered judgment against the said High-smith for sixty-one dollars with interest from the 13th of November, 1878, and costs thirteen dollars and ten cents, and on the same day was docketed in the superior court clerk's office of Pitt county..

Executions on all these judgments bearing teste of fall term, 1879, were in the hands of the sheriff at the time of the sale and by virtue thereof the land was sold on the 15th day of April, 1880, for the sum of three hundred and seventy-five dollars.

The sheriff says he is ignorant as to how this money should be applied and has asked the advice of the court.

Whitehead and Nobles, as the assignees of Brown, Cherry & Perkins and of Forbes, and Latham & Skinner made themselves parties to the proceeding and contest the application of the fund, the former insisting that the fund should be applied to their judgments and the latter contending that it should first be applied to the satisfaction of their judgment and the balance applied to the judgments of the other party.

His Honor in the court below held that the fund in the hands of the sheriff should be applied, first, to the two executions in favor of Alfred Forbes, then to the execution in favor of Latham & Skinner, and the balance to the execution in favor of Brown, Cherry & Perkins, from which ruling the plaintiffs appealed.

*Mr. W. B. Rodman*, for plaintiffs.
*Mr. J. B. Yellowley.* for defendants.

ASHE, J., after stating the case. We are of opinion there was error in the instructions given by His Honor for the application of the money. We cannot understand upon what principles the two judgments in favor of Forbes should be given a preference over that of Latham & Skinner, unless

it was upon the ground that his judgments had been first docketed. But when we come to examine his claim to a preference, we think it must yield precedence to the judgment of Latham & Skinner. Their judgment was rendered and docketed on the 18th day of January, 1878, and then created a lien on the land which was sold and that lien was continued and in full force up to the day of sale. Forbes' judgments were docketed on the 29th day of June, 1869, and no execution was issued thereon until the 19th day of December, 1879, more than ten years after the docketing the judgments, and not until the lien of the judgments had expired from the lapse of time. At the date of the sale, then, Forbes had no lien on the land, unless he acquired one by virtue of the levy of his executions which bore teste only from the fall term, 1879, a date subsequent to that of the lien of Latham & Skinner. The fact that Forbes' judgments had been docketed in June, 1869, can give him no advantage, for as has been said he had lost that lien by efflux of time and was then in no better condition than if he had never had a lien. The satisfaction of his executions should therefore be postponed to that of Latham & Skinner. The two Forbes judgments, however, were transferred to the superior court docket under the new system and became judgments of that court and the clerk of that court had the right under proper circumstances to issue executions thereon, and in that respect they had the advantage over the judgment in favor of Brown, Cherry & Perkins; for it does not appear that any execution on it had been issued and levied on the land of the defendant Highsmith, so as to have secured a lien before the change in the courts, nor was it ever docketed in the superior court of Pitt, or for aught that appears, ever transferred to that court after the adoption of the constitution of 1868. But the learned counsel for Whitehead and Nobles strenuously contends that Brown, Cherry & Perkins by their judgment

rendered in the superior court of Pitt county, before the adoption of the new judicial system, acquired vested· rights, to-wit, the right to issue execution on their judgment which should be a lien on the land of the defendant in the execution from its teste, and under which the lands of the defendant could be sold for the satisfaction of their judgment, and that no act of the legislature, whether in the form of an amended constitution or of an ordinary act of assembly, could destroy those vested rights or impair the obligation of the contract of which the record of the judgment was the conclusive proof.

To change the mode of acquiring a lien under a judgment upon the property of the debtor neither impairs the obligation of the contract nor violates any vested right. The legislature may at any time modify the remedy without impairing the obligation of the contract. Cooley Const. Lim., p. 35, and note and cases there cited. And the right to issue a *fi. fa.* on a judgment is not a vested right. The same author in this work referred to (page 448) says: "The right to a particular remedy is not a vested right. This is the general rule, and the exceptions are of those peculiar cases in which the remedy is part of the right itself. As a general rule every state has complete control over the remedies to suitors in its courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new, or even without substituting any, if a reasonable remedy still remains." According to this authority the right to issue the *fi. fa.* in order to bind the land of the defendant is not a vested right, and the legislature had the right to change the remedy by substituting the lien of the judgment for that of the *fi. fa.* It in fact provided a better remedy by giving, if the conditions imposed were complied with, a continuous and permanent lien in place of one that is liable to be lost

by neglect or the want of proper diligence. This execution then of Brown, Cherry & Perkins should be postponed to those of Forbes. They are all dormant, and to say the least, very irregular. But as there is no objection made by any one to their sharing in the distribution of the money in the hands of the sheriff, we hold that the fund should be first applied to the satisfaction of the execution in favor of Latham & Skinner, then to those in favor of Alfred Forbes, and the balance to that of Brown, Cherry & Perkins.

. There is error. Let this be certified to the superior court of Pitt county.

Error.                                   Reversed.