W. H. MOTZ v. J. & E. B. STOWE.

*Executions — Application of Fund — Equitable · Assignment —
Bankruptcy — Notice.*

1. Where several executions come into the hands of a sheriff before a sale of the debtor's property, it is the duty of the sheriff to apply the proceeds of sale to the senior execution.

2. And as soon as a sheriff receives money in payment of an execution, the law makes the application, and it is a satisfaction of the judgment; and such money in the sheriff's hands is held by him to the use of the judgment creditor or his assignee, who may make an equitable transfer of his interest—whether in the form of an order or assignment, or whether the same be recorded or not.

3. An assignee in bankruptcy takes the estate of the bankrupt subject to all the equities against it, and a purchaser at his sale takes in like manner, whether he had notice of the equities or not.

4. Assignment of equitable interests discussed by ASHE, J.

*(Allemong* v. *Allison*, 1 Hawks, 325; *Henry* v. *Rich*, 64 N. C., 379; *Murrell* v. *Roberts*, 11 Ired., 424; *Steadman* v. *Taylor*, 77 N. C., 134; *Clerk's Office* v. *Bank*, 66 N. C., 214, cited and approved )

APPLICATION of sheriff for directions as to the proper distribution of fund raised by executions against defendants in favor of the plaintiff and other creditors, heard at Chambers in LINCOLNTON, in July, 1879, before *Schenck. J.*

The matter was heard upon exceptions to a referee's report, and Shipp & Bailey, creditors, appealed from the ruling of the judge below.

*Messrs John D. Shaw, Hoke & Hoke* and *Hinsdale & Devereux* represented the interests of the different claimants.

ASHE, J.  The sheriffs of Lincoln and Gaston counties having funds in their hands, collected by virtue of executions against J. and E. B. Stowe, in their respective counties,

not knowing how the same should be distributed among several judgment creditors, applied to Judge Schenck, of the 6th judicial district, for advice as to the application of said funds. Notice of the application was ordered by His Honor to be issued by the clerk of the superior court of Lincoln county to all the creditors interested in the distribution of the funds, and by consent of parties it was referred to Geo. F. Bason to find and report, to His Honor at chambers, the amount of money in the hands of each of said sheriffs, derived from the sale of land belonging to J. and E. B. Stowe or either of them, the amounts and dates of docketing all judgments unpaid in both counties, and all facts that may be necessary for a proper distribution of the funds. The referee made his report in due time, and exceptions were taken thereto by Messrs. Shipp & Bailey. His Honor overruled the exceptions and confirmed the report of the referee, and directed how the money should be applied.

As we discover no error in the principle on which His Honor directed the distribution of the funds in the hands of the sheriff of Gaston, and that collected by the sheriff of Lincoln in August, 1878, it will be needless to advert to that branch of the case, except so far as it may be necessary to do so in considering the applications of the sheriff of Lincoln.

The referee reported that there was in the hands of J. A. Robinson, sheriff of Lincoln county, the sum of twelve hundred and fifty dollars, collected as follows: six hundred and ninety-six dollars thereof by a sale in 1875, of the lands of Jasper Stowe under various executions, returnable to spring term, 1875, of Gaston superior court; fifty-five thereof by a sale of the lands of said Jasper Stowe, and five hundred thereof by a sale of the land of E. B. Stowe, in August, 1878, under executions returnable to fall term, 1878, of Gaston superior court, issued upon judgments in favor of Bee be & Foyle, J. R. Falls, Sarah Beatty, W. H. Michal,

Wiley Rudisill, and J. C. Burroughs, all of which were rendered at spring term, 1870, of Gaston superior court and docketed in the county of Lincoln. That in 1875, when the sheriff of Lincoln made the sale by which he made the six hundred and ninety-six dollars mentioned above, the oldest judgment of record in Lincoln was one in favor of *W. H. Motz, administrator,* v. *J. and E. B. Stowe,* for some two thousand dollars; which was also a transcript from Gaston. Before said sale in 1875, it had been regularly assigned for value to Dr. Wm. Sloan, and the assignment put upon the record by the plaintiff therein. During the year 1875, and before the sheriff had made any disposition of this fund of six hundred and ninety-six dollars, Sloan made an assignment in writing to Messrs. Shipp & Bailey, of which the following is a copy :

In consideration of legal services performed and to be performed by Shipp & Bailey, attorneys at law, for me, I hereby assign to them the money now in the hands of the sheriff of Lincoln county raised upon executions belonging to me against the property of J. and E. B. Stowe, about six hundred dollars. This the 8th of November, 1875.

(Signed)                              Wm. Sloan.

The assignment was made before Sloan went into bankruptcy, and before any suits were brought or judgments obtained against him, but was never recorded. Mr. Shipp immediately notified the sheriff and demanded the money.

In 1876, the sheriff of Gaston raised some twelve thousand dollars by a sale of the property of the Stowes, the distribution of which was referred to W. L. T. Prince. All the judgment creditors had notice of this proceeding. Shipp & Bailey had no actual notice served upon them, nor did they ask to be made parties, or make any claim for any part of this fund, nor did they give notice of their claim on the Lincoln fund. That the claim of Shipp & Bailey was neither presented nor passed upon by Mr. Prince in this

reference, and that Jasper Stowe was before Prince and examined as a witness.

The fund in Lincoln was not considered in this reference, but a report was made by Prince distributing the Gaston fund, and a decree of the court was made confirming Prince's report. Among the judgments paid off in full under this distribution, was the Motz judgment above mentioned, and Sloan's assignee in bankruptcy received the money paid thereon and entered satisfaction thereof upon the record.

The contest for the fund in Lincoln was between Shipp & Bailey and the creditors for the six hundred and ninety-six dollars; and Beebe & Foyle and the remaining creditors about the entire amount, Beebe & Foyle claiming the whole and the other creditors claiming to come in and share with them.

He reports that the sum of seventy-five dollars was to be allowed to the referee for making the report, to be divided ratably between the different funds—thirteen dollars charged on the Gaston fund and sixty-two on the fund in the hands of the sheriff of Lincoln—and as his conclusion of law, that Shipp & Bailey by the assignment of Sloan acquired no right to any part of the fund in the hands of the sheriff of Lincoln; Shipp & Bailey excepted to the report:

1. In that the referee has erred in the conclusion of law drawn by him from the facts, to the effect that these exceptants are not entitled to the six hundred and ninety-six dollars in the hands of the sheriff of Lincoln county, particularly specified in the report, or any part thereof.

2. In that he has erred in deciding that Beebe & Foyle are entitled to the whole of said fund, for if the exceptants are not entitled to the whole of the six hundred and ninety-six dollars, he should have found that it should be divided pro rata amongst the seven judgments obtained in Gaston

county and docketed in Lincoln, and particularly specified in said report.

It appears from the facts found by the referee, that at the time of the sale of the land of J. and E. B. Stowe in 1875, there were sundry executions in the hands of the sheriff of Lincoln county, and that of Motz assigned to Sloan had priority, by reason of its seniority over all the others; that the sum of six hundred and ninety-six dollars was then raised by the sale under those executions; and that before the bankruptcy of Sloan, or any suits brought or judgments obtained against him, he assigned to Shipp & Bailey the amount in the sheriff's hands applicable to his judgment, and notice thereof was given him and a demand made for the money. All the judgments upon which these executions issued were rendered in the superior court of Gaston county, and were regularly docketed in the county of Lincoln.

It is well established law that where several executions come to the hands of the sheriff before a sale of the debtor's property, it is the duty of the sheriff to apply the proceeds of the sale to the senior execution, and even when he has seized property under a *fieri facias*, and before he has completed execution another *fieri facias* comes to his hands with a prior lien, or having the preferable right of satisfaction, he should satisfy the last mentioned execution. *Allemong* v. *Allison*, 1 Hawks, 325; Herman on Executions, 271. It is not only the duty of the sheriff to apply the proceeds to the satisfaction of the oldest judgment lien, but in contemplation of law it is so applied unless the sheriff in violation of duty makes a misapplication of the fund to a junior lien. Just as soon as a sheriff receives money in payment of an execution, the law makes the application and it is a satisfaction of the judgment. *Henry* v. *Rich*, 64 N. C., 379; *Murrell* v. *Roberts*, 11 Ired., 424.

But when there are several executions in the hands of the

sheriff, he may if he see proper discharge a junior execution in preference to one having priority, by incurring a liability to an action for damages to the creditor in the senior execution; but if he fails to do so, then the law makes the application. In our case he has never made any application of the proceeds of the sale to any execution. So when the money came into his hands, in contemplation of law, it was applied to the Motz judgment, and was money in his hands had and received to the use of Sloan, the assignee of Motz. Herman on Executions, § 267.

It was the duty of the sheriff to have returned the six hundred and ninety-six dollars after deducting the costs, his fees, and commissions, with the execution into the office from which it issued for the use of Sloan, or to have paid it to Sloan, to his order or to his attorney. Herman on Executions, § 268. If then the six hundred and ninety-six dollars was held by the sheriff to the use of Sloan, and it was the duty of the sheriff to pay over the same to him or to his use, it was such an interest in the fund as might be equitably assigned, and it would make no difference whether the transfer was in the form of an order or assignment, nor whether it was recorded or not. "As a general rule anything written, said, or done, in pursuance of an agreement and for valuable consideration, or in consideration of some pre-existing debt, to place a money right or fund out of the original owner's control, and to appropriate in favor of another person, amounts to an equitable assignment. Hence no writing or particular form of words is necessary, provided only a consideration be proved and the intention of the parties made apparent by suitable evidence." 1 Schouler on Personal Property, 100. And to the same effect is Adams' Equity, 170–1, where it is said, in order to pursue as nearly as possible the analogy of law, it is required that the assignment of equitable interests should be perfected by notice to the trustee, so as to deprive the assignor of subse-

quent control, and to effect a constructive delivery to the assignee. The principle of constructive delivery by notice to the trustee is applied to a debt or other chose in action, and there is no special form necessary; "but any declaration, either by writing or word of mouth, that a transfer is intended, will be effectual, provided that it amount to an appropriation to the assignee; for inasmuch as the fund is not assignable at law, nor capable of manual possession, an appropriation is all that the case admits." Adams' Equity, 54–55. The law does not require such an assignment to be registered.

With the application of the money raised by sale of Stowe's property in the county of Gaston (as reported by W. L. T. Prince) Shipp & Bailey have no concern. They had no actual notice of that reference, and their rights cannot be affected by it. That was a question that lay between Sloan's assignee, the debtor, and the other creditors. If they or any of them submitted to an application of the fund which deprived them of their rights, without resorting to the proper remedy to redress the wrong, it was their own fault, and they must bear the loss. Shipp and Bailey having acquired a good equitable title to the six hundred and ninety-six dollars in the hands of the sheriff of Lincoln, cannot be defeated of their rights by any act of Sloan nor of his assignee. The assignee in bankruptcy takes the estate of the bankrupt subject to all equities against it. It is settled in this state that a purchaser at an assignee's sale takes subject to all equities whether he had notice of them or not. *Steadman* v. *Taylor*, 77 N. C., 134; *Clerk's Office* v. *Bank*, 66 N. C., 214.

We hold that His Honor committed an error in overruling the first exception taken by Shipp & Bailey, and our decision on that point disposes of the second exception.

We are of the opinion, and so decide, that Shipp & Bailey are entitled to the six hundred and ninety-six dol-

lars, subject to the costs of the action incurred in the superior court of Lincoln, the sheriff's fees and commissions due under the Motz execution, and to a ratable part of the sixty-two dollars charged upon the Lincoln fund for the allowance to the referee for making report. Let this be certified to the superior court of Lincoln county, that the judgment of that court may be modified in accordance with this opinion.

Error.                                   Reversed.