STATE ex rel. A. B. TITMAN, Adm'r, v. H. T. RHYNE, Adm'r, and others.

### *Sheriff—Executions—Lien of Judgment.*

1. A sheriff is liable upon his official bond for a failure to apply proceeds of sale of debtor's land in payment of an execution, in his hands at the time of sale, issued upon a judgment having the prior lien.

2. The lien upon land acquired by docketing a judgment cannot be displaced by one subsequently acquired. (The rights of the party under the judgment and execution of this court, were lost by not issuing *alias executions*).

(*Rhyne* v. *McKee*, 73 N. C., 259; *Perry* v. *Morris*, 65 N. C., 221; *Isler* v. *Colgrove*, 75 N. C., 334; *Cannon* v. *Parker*, 81 N. C., 320; *Pasour* v. *Rhyne*, 82 N. C., 149; *Whitehead* v. *Latham*, 83 N. C., 232; *Worsley* v. *Bryan*, 86 N. C., 343, cited and approved).

CIVIL ACTION tried at Spring Term, 1883, of GASTON Superior Court, before *Shipp, J.*

The defendants appealed.

*Mr. G. F. Bason,* for plaintiff.
*Mr. W. P. Bynum,* for defendants.

MERRIMON, J. This action is brought by A. B. Titman, administrator of J. M. Wright, deceased, upon the official bonds of R. D. Rhyne, deceased, who was in his life-time sheriff of Gaston county from September, 1874, to December, 1876. The defendant H. T. Rhyne is administrator of R. D. Rhyne, and the other defendants are the sureties (or the representatives of them) to his official bonds.

The record shows that the said J. M. Wright had judgment against Jacob Lineberger for $254.66, with interest thereon and for costs, and that it was duly docketed in the superior court of Gaston county on the 28th day of August, 1873; that G. W. McKee also had judgment against said Lineberger for $547.80, with interest thereon and for costs, duly docketed in said superior court on the 8th day of November, 1873. Upon these judgments, executions issued, and were directed and delivered to the said sheriff R. D. Rhyne, and he had the same in his hands on the 3d of April, 1876. He levied them upon and sold the lands of Lineberger, and realized therefrom $584, and applied this money to the execution in favor of McKee, except $14.75, the costs of setting apart the homestead of Lineberger.

Afterwards another execution issued upon the judgment in favor of the said J. M. Wright, directed and delivered to said

sheriff; and likewise, an execution issued from this, the supreme court, upon a judgment in favor of G. W. McKee, rendered at the January term, 1873, of this court, for the sum of $2,625, dated on the 1st day of August, 1873, and returnable to the January term of this court, 1874, and secondly, another, dated July 1st, 1876, returnable to the January term of 1877, this last one, and the last one above named in favor of said Wright, were both issued and directed to and in the hands of said sheriff at the same time. He levied them upon and (on the 4th day of September, 1876) sold other lands of the said Lineberger, and realized therefor $25; no part of this sum was applied to the execution in favor of said Wright, nor did the sheriff ever make return thereof.

The relator of the plaintiff assigned breaches of said official bonds, in that the sheriff had failed to apply, first, a sufficient part of the money so realized by him for the land sold upon said executions to the payment of the judgment, interest and costs in favor of his intestate J. M. Wright, and that he had failed to make due return of the executions in his favor. The defendants denied that the sheriff had committed such or any breach of his bonds.

The parties waived a trial by jury, and by common consent, the judge found the facts and the law arising upon them, and upon consideration, gave judgment for the plaintiff. The defendants excepted and appealed to this court.

THE CODE, §435, provides that "upon filing a judgment-roll upon a judgment affecting the title of real property, or directing in whole or in part the payment of money, it shall be docketed on the judgment docket of the superior court of the county where the judgment-roll was filed, and may be docketed on the judgment docket of the superior court of any other county upon the filing with the clerk thereof a transcript of the original docket, and shall be a *lien* on the real property in the county where the same is docketed, of every person against whom any such judgment shall be rendered, and which he may have at the

time of the docketing thereof in the county in which such real property is situated, or which he shall acquire at any time thereafter for ten years from the date of the rendition of the judgment," &c.

The judgment of Wright, therefore, became a lien upon all the lands of Lineberger in the county of Gaston, which he owned on the 28th day of August, 1873, and which he owned at any time within ten years next thereafter until the same was discharged. In the absence of personal property to be sold to satisfy this judgment, the owner of it was entitled to have this lien enforced by execution and a sale of the lands thereunder, at any time while it continued in force, and no subsequent lien could displace it; nor would any sale under execution, issued upon a judgment docketed subsequently to it, operate to discharge it, or pass the title to the land except subject to it as a prior lien.

The sheriff made two sales of the land of Lineberger, and at the time of each he had in his hands an execution issued in favor of Wright to enforce his prior lien. The money he realized by these sales was applicable, first, to the discharge of this lien, and it was his plain duty to so apply it. There was not a shadow of authority for applying the money, first, in favor of the lien (the subsequent lien) of McKee.

The counsel for the defendants insisted that the teste of the execution issuing from this court in favor of McKee antedated the date of the docketing of the judgment in favor of Wright, and therefore the money ought to have been applied to it, and he relied upon the case of *Rhyne* v. *McKee*, 73 N. C., 259. So the first execution issuing from this court did; and if the land had been sold pending that execution, it would have taken the money; but the land was not then sold; it was not sold until 1876, and the execution issuing from this court at that term bore teste as of the term of this court next before that term, and its *teste* did not antedate Wright's lien. If there had been a levy of the first execution issuing from this court upon the land, and the

lien thus created had been kept up by *alias* executions, and a *venditioni exponas*, then the money realized for the land sold ought to have been applied to the judgment in this court, not otherwise. The lien created by the first execution issuing from this court was lost. *Perry* v. *Morris*, 65 N. C., 221; *Isler* v. *Colgrove*, 75 N. C., 334; *Cannon* v. *Parker*, 81 N. C., 328; *Pasour* v. *Rhyne*, 82 N. C., 149; *Whitehead* v. *Latham*, 83 N. C., 232; *Worsley* v. *Bryan*, 86 N. C., 343.

In failing to apply a sufficient amount of the money for which he sold the lands mentioned, to the payment of the docketed judgment in favor of the intestate of the relator, the sheriff committed a breach of his official bond, for which the defendants are answerable in this action.

The plaintiff is entitled to have judgment for the sum specified in the bond, to be discharged upon the payment of the relator's debt and costs.

There is no error in the judgment of the superior court, and it must be affirmed. Let this be certified.

No error.                                     Affirmed.