J. M. MEYERS and wife v. J. A. RICE and wife.

*Petition for Partition—Motion in the Cause—Owelty of Partition—Execution to Enforce Equality.*

1. A motion in the cause for execution is the proper proceeding to subject land charged with owelty of partition to the payment thereof.

2. Payment under execution of the charge in favor of one share does not discharge the land in the hands of the purchaser from the payment of a charge in favor of another share.

3. The purchaser takes with notice of the liens in favor of the other shares.

4. Land was partitioned in 1881, among several tenants in common, and one share, more valuable than the others, was charged with certain sums in their favor. In 1888, sale of the lot so charged was made under executions to discharge the liens in favor of some of the shares and not in favor of others, and the whole of the purchase-money was so paid, against the protest of the latter shareholders, who also knew of the sale. The share so sold was pur-

chased by one of the share-holders, in whose favor execution issued, and he made a mortgage to a third person: *Held*, that the share-holders who received none of the proceeds of sale were entitled to have the land re-sold to discharge the liens in favor of their shares.

5. The lien of such share-holders was prior to that of the mortgagee—he took with notice of such lien.

This was a motion heard at Spring Term, 1890, of BERTIE Superior Court, by *Armfield, J.*, in the special proceeding for an execution (in effect a *venditioni exponas*) to sell the land specified therein, based upon the following statement of facts agreed upon by the parties and submitted to the Court for its judgment thereon:

1. J. H. Herring died in Bertie County, in 1881, seized in fee of the following land in that county: The Nichols tract, in Mitchell's Township, adjoining the lands of Mills Eure, Joseph Willoughby and others, containing one hundred and thirty acres, more or less. Also the Herring tract, in same township, containing one hundred and twenty-five acres, more or less, adjoining the lands of J. A. Rice, John Rice and others, which lands descended, subject to the widow's dower, to J. H. Herring's six children, his only heirs at law, the *feme* plaintiff Louisa, the *feme* defendant Roxana Rice, W. C. Herring, W. S. Herring, J. W. Herring and Fannie D. Herring (now Fannie D. Marsh).

2. That during 1881, the above lands, by proceedings instituted in this cause by J. M. Meyers and wife, Louisa V., against the other heirs at law, were duly partitioned between the said heirs at law by commissioners duly appointed.

3. That said commissioners, October 21st, 1881, made their report, in which, after valuing the whole lands at $2,400, they divided it into six equal shares, Nos. 1, 2, 3, 4, 5 and 6. Each share, except No. 2, was valued at less than $400. No. 2 was valued at $800, and charged in favor of

the other heirs, respectively, for equality of partition. This share No. 2. was allotted to the *feme* plaintiff, Louisa V.

4. Share No. 6 was allotted to Fannie D. Marsh, valued at $260, and share No. 2 was charged in her favor with $140 for equality.

Share No. 5 was valued at $310 and allotted to J. W. Herring, and share No. 2 was charged in his favor with $90 for equality.

5. Fannie D. Marsh and J. W. Herring were under twenty-one years of age October 21st, 1881, and remained so, the said Fannie till _____, 1887, and said J. W. Herring till March 20th, 1889. Fannie D. married _____ Marsh while under age, and has remained *covert* ever since.

6. That the report of the commissioners was confirmed by the Courts.

None of the charges for equality were paid till 1888, when proceedings were had by all the heirs at law, except Fannie D. Marsh and J. W. Herring, to enforce the payment of the amounts due them respectively, and under said proceedings, to-wit, executions in this cause in favor of the heirs at law, except Fannie D. and J. W. Herring, the said share No. 6 was sold to the plaintiff J. M. Meyers by the Sheriff of Bertie County at $230, and deed made to him. This sale was made October 21st, 1888.

7. The sum paid by J. M. Meyers was not more than sufficient to pay the heirs at law, other than Fannie D. and J. W. Herring, and the whole was paid over to them against the protest of said Meyers, who insisted to the Sheriff and Clerk that the heirs last named should prorate in said fund, and no part of the amount due them has ever been paid.

8. That Fannie D. and J. W. Herring knew of the sale made October 31st, 1888.

9. That one C. W. Mitchell, after the said purchase by Meyers, loaned him $275, $230 of which was used in paying the Sheriff for the land, and a mortgage upon said land was

executed to Mitchell to secure him, which was duly registered before the service of the notice in this cause.

10. J. M. Meyers intermarried with Louisa, J. A. Rice with Roxanna, before 1881, and were parties to the partition proceedings.

Upon these facts, M. C. Marsh and wife, Fannie D., and J. W. Herring, moved the Court to issue execution in this cause, and direct a sale of share No. 2 for the purpose of paying the charges for equality aforesaid, interest and cost, in favor of said Fannie D. and J. W. Herring.

J. M. Myers resists this motion, and insists that, by virtue of the sale and Sheriff's deed of October 31st, 1888, he obtained title to the land, discharged of any claim in favor of said parties.

The Court gave judgment, whereof the following is a copy:

"Upon motion of M. C. Marsh and wife, Fannie D., and J. W. Herring, after a full consideration of the facts agreed in this cause, it is ordered that execution issue in favor of Fannie D. Marsh and J. W. Herring against share No. 2 of the lands of the late J. H. Herring allotted in this cause to the *feme* plaintiff, and described particularly in the decree in this cause, for the amounts charged against said share for equality of partition, to-wit, the sum of one hundred and forty dollars in favor of Fannie D., and ninety dollars in favor of J. W. Herring, with interest on each sum from October 21st, 1881, till paid, and all cost hereof, and that the said lands be exposed for sale to pay the same.

" Let execution and order of sale issue accordingly."

Thereupon, the plaintiffs, having excepted, appealed to this Court.

*Mr. D. C. Winston*, for plaintiffs.
*Messrs. Pruden & Vann* (by brief) for defendants.

MERRIMON, C. J. (after stating facts): The Statute (*The Code*, §§ 1892, 1900) prescribes how real estate may be parti-

tioned among persons claiming the same as tenants in common, and it is, among other things, provided that commissioners for the purpose shall " meet on the premises and partition the same among the tenants in common, according to their respective rights and interest therein by dividing the land into equal shares in point of value, or as nearly so as possible, and for this purpose they are empowered to subdivide the more valuable tracts as they may deem best, and to charge the more valuable dividends with such sums of money as they may think necessary to be paid to the dividends of inferior value, in order to make an equitable partition." The charge made as thus allowed upon the more valuable dividend of land at once becomes not a personal charge against the party to whom this dividend is allotted, but upon the land itself, and judgment confirming the report of the commissioners who partitioned the land creates and establishes the charge and a lien or liens upon such more valuable dividend in favor of the party or parties who received the less valuable dividends. Moreover, the charges thus are several and in favor of the parties respectively who received the less valuable dividends, if there be more than one. Such charge and lien may be enforced by *venditioni exponas* at the instance of the party entitled, and also, in some cases, by process of attachment. *Wynne* v. *Tunstall*, 1 Dev. Eq., 23; *Jones* v. *Sherrard*, 2 D. & B. Eq., 180; *Waring* v. *Wadsworth*, 80 N. C., 345; *Halso* v. *Cole*, 82 N. C, 163, and there are numerous cases to the like effect.

In the present case, the more valuable dividend designated as number "two," was charged with one hundred and forty dollars in favor of the less valuable dividend designated as number "six," allotted to Fannie D. Marsh, one of the appellees, and with ninety dollars in favor of the dividend designated as number "five," allotted to the appellee J. W. Herring, and, also, with other sums in favor of others of the tenants in common, who received less valuable dividends.

Certain of the latter applied for and obtained execution to enforce their respective liens, and the more valuable dividend so charged was sold under the same, and the appellant purchased at the sale. He contends that he purchased that dividend discharged of the charges and lien in favor of the less valuable dividends allotted to the appellees. The Court held otherwise, and this is assigned as error.

We are of opinion that the objection of the appellant is not well founded. The more valuable dividend—the land itself—was charged with the sums of money specified in favor of those of less value, allotted to the appellees respectively. The latter each had an interest in the land to the extent of the charge in favor of his dividend, not in common with others, who had less valuable dividends with like charges in their favor, but separate and distinct from them. So that if the more valuable dividend had paid the money charged upon it in favor of one of the less valuable ones, such payment could not effect the similar charge in favor of others.

The payment of the money thus made a charge upon the more valuable dividend in favor of a less valuable one might be enforced by *venditioni exponas*, sued out at the instance of the owner thereof, but the sale of the land under it could not effect adversely other like charges upon the same, because its purpose would be only to enforce the charge specified in it, and not another or other charges, in the absence of some order of the Court to the contrary, made upon proper application and upon notice thereof to the owners of the dividends of less value having like charges. There is nothing in the nature of the writ of *venditioni exponas*, nor is there any principle of law or statutory provision or rule of practice that makes a sale of land under such writ operate so as to pass the title thereof to the purchaser discharge of senoir incumbrances or incumbrances of the same date upon it, other than that mentioned in it, and

which its direct purpose is to enforce. It would be unreasonable and unjust, as well as violative of common right, to deprive such incumbrancers of their interests in the land, and their security and rights growing out of it by such a sale without giving them fair opportunity—a day in Court—to be heard as to the expediency and propriety of a sale thereof. It is not sufficient to say they might look to and share in the proceeds of the sale of the land to their respective rights and the priorities of them. If heard, they might be able to show that a sale should not be made at the time and in the way proposed by the mover for the writ of *venditioni exponas.* They have the right to be heard in Court, and they cannot be deprived of that right without notice and reasonable opportunity to be heard.

The purchaser of the land cannot reasonably complain that he expected to buy a perfect title. He had opportunity to see the writ under which the sale was made, the judgment or order of the Court authorizing or directing it, and know, from the proper records and registries, that there were other incumbrances on the land than that or those which the sale was intended to enforce.

Sales to enforce charges upon land, such as those under consideration, are not altogether like the ordinary sales of land to satisfy judgments for money. But a sale under the writ of *fieri facias* does not operate to pass the title to the land sold under it discharged of prior liens of judgments for money upon it. A sale of land under a junior judgment is made subject to the lien of a senior judgment, and a second sale thereof may be made to enforce the latter, and such second sale will pass the title to the purchaser as if the first sale had not been made. This is well settled, and upon the ground that a sale under execution cannot have the effect to pass the title to land discharged of all prior liens. The judgment docketed creates the lien, and it must have effect and be enforced in the order of priority. *Halyburton*

v. *Greenlee*, 72 N. C., 316; *Cannon* v. *Parker*, 81 N. C., 320; *Worseley* v. *Bryan*, 86 N. C., 343; *Titman* v. *Rhyne*, 89 N. C., 64; *Burton* v. *Spiers*, 92 N. C., 503.

Certain of the tenants in common, to whom were allotted dividends of less value, in favor of which the dividend of greater value was charged with certain sums of money specified, applied for and obtained a *venditioni exponas* to enforce the charges in their favor, and the dividend of greater value so charged was sold, the appellant being the purchaser. That application did not embrace the appellees; no notice of the same was given to them, nor did the *venditioni exponas* purport to embrace the charges in favor of their dividends or themselves. The appellant was chargeable with notice of these facts. It was his duty to himself to see the writ under which the land was sold, and the record authorizing the same, and the presumption is he did so. It must be taken that he knew he purchased subject to the rights of the appellees and and the charges in their favor. It seems he did, in fact. He purchased the land for much less than half its assessed value.                         Judgment affirmed.