## W. W. DYSART v. G. BRANDRETH.

*Practice—Execution—Return of Sheriff—False Recital—Motion to Strike Out Return—Judgment of Justice of the Peace—Docketing—Lien—Appeal—Supersedeas Bond—Execution Sale—Application of Proceeds —Priorities.*

1.  Where a sheriff's return on an execution recited payment of the money realized thereon in satisfaction of a judgment, and it appeared from a subsequent affidavit of the sheriff that the return was incorrect, and that he retained the money to await the orders of the court; *Held,* that such return will, on motion of an interested party, be stricken from the record.

2.  A judgment of a justice of the peace when duly docketed in the office of the superior court clerk becomes a judgment of that court to all intents and purposes, and is a lien upon all of the real estate of the defendant in the county.

3.  Where an appeal is taken from a judgment of a justice of the peace, and security is given to stay execution, the plaintiff is not deprived of the right to have it docketed in the superior court, nor is the lien of the judgment destroyed by the appeal and supersedeas bond.

4.  A judgment of a justice of the peace does not become dormant by the failure to issue execution thereon pending an appeal from the judgment where bond has been given to stay.

5.  Where a sheriff sells land under execution, the law applies the proceeds first to the satisfaction of the execution issuing on the oldest judgment in his hands at time of the sale.

6.  It is not necessary, in order that a judgment may share, according to its priority of lien, in the proceeds of sale that advertisement shall have been made under it, if the sheriff has other valid executions in his hands under which proper notice of sale has been given, but there must be an execution on such judgment in the sheriff's hands on the day of sale.

7. Where a sheriff sells land under several executions, having in his hands at time of sale an execution issued on the judgment having the oldest lien, the purchaser gets the land discharged from the lien of any judgment subsequent to the oldest.

8. Where a sheriff sells land under a junior judgment or judgments, having no execution in his hands issuing on older judgments, the purchaser takes the title subject to the liens of the older judgments.

This was a MOTION, heard upon affidavits, before *Graham*, *J.*, at Spring Term, 1895, of CHEROKEE Superior Court.

M. L. Mauney, R. Akin and Black & Moore obtained judgments against G. Brandreth, before a justice of the peace, and caused transcripts of the same to be docketed in the superior court of Cherokee county on the 20th and 22d of June, 1891.

Brandreth appealed to the superior court, and A. L. Cooper became surety on his bond to stay execution. To indemnify Cooper against any loss he might suffer by reason of said suretyship, G. Brandreth, on the 11th day of July, 1891, executed to W. N. Cooper a deed in trust upon his dwelling-house and lot in Murphy, N. C.

At July term (special), 1893, of the superior court, Mauney, Akin and Black & Moore each obtained judgment against Brandreth and A. L. Cooper on the appeals, and said judgments were forthwith docketed on the judgment docket.

At spring term, 1892, of the superior court of Cherokee county, W. W. Dysart recovered judgment against G. Brandreth and one J. S. Meroney, and the same was docketed on the judgment docket.

On September 8th, 1893, Brandreth's homestead was allotted to him in the dwelling-house and lot in the town of Murphy, that had been conveyed to W. N. Cooper, trustee, to indemnify A. L. Cooper, his surety on the bonds, to stay execution on appeal.

DYSART v. BRANDRETH.

After the fall term, 1894, of Cherokee superior court, execution was issued upon the Dysart judgment, and upon the judgments recovered in the superior court on appeal against G. Brandreth and A. L. Cooper, his surety. No execution was ever issued upon the judgments recovered in the justice of the peace court and docketed in judgment docket of the superior court.

Under said executions the sheriff sold the excess of Brandreth's real property over the homestead, amounting to $1,950, and threatened to apply the proceeds to the payment, first, of the Dysart judgment, and the excess, so far as it would go, to the Akin, Manney and Black & Moore judgments. It was admitted that there would not be a sufficiency to meet said judgments, and that A. L. Cooper would have to pay the balance, as Brandreth was insolvent, and would then have the right to have the *deed in trust* upon Brandreth's homestead foreclosed.

Brandreth filed an affidavit setting forth these facts, and praying that the sheriff be required to apply the proceeds of the sale of the excess of his real property, first, to the payment of the executions in his hands on the Manney, Akin and Black & Moore judgments, in order to exonerate his homestead from the *deed in trust* executed to indemnify his surety, A. L. Cooper, and that any excess be applied to the payment of the Dysart judgment.

The plaintiffs, Manney, Akin and Black & Moore filed no answer to the affidavit.

W. W. Dysart, through his attorney, J. W. Cooper, Esq., filed an answer.

Upon a full argument in behalf of Brandreth and Dysart, the court rendered judgment, directing the sheriff to apply the proceeds of the sale to the judgments of Manney, Akin and Black & Moore, according to their priority, and the

balance, if any, to the payment of the W. W. Dysart judgment.    Plaintiff Dysart excepted and appealed.

*Mr. J. W. Cooper*, for plaintiff (appellant).
*Mr. E. B. Norvell*, for defendant.

FURCHES, J. :   Preliminary to the main question presented by the case is the motion of defendant to strike from the record what purports to be the return of Sheriff Davidson, dated May 22, 1895.   This motion must be allowed.   The sale took place on the 22d of May—the day the return bears date, the time when it should have been made.   But several witnesses testified to the fact that it was not made on that day but some weeks afterwards.   It is a matter of common knowledge that public officers, in the press of business, as this was during court week, (22d May,) do not make their returns at once, but do so as soon thereafter as it is convenient, and date them back to agree with the date of sale or transaction.   And while it is best to make these returns at the time of the transaction, it is almost impossible always to do so.   In this return, as appears of record, the sheriff states that he had paid J. W. Cooper as attorney $960 on the Dysart execution.   And as J. W. Cooper was acting as attorney for Dysart, and Sheriff Davidson in his affidavit, made on May 28, 1895, (in reply to a rule upon them,) says that the sheriff had then paid on the Dysart execution $960, we would be disposed to let the return stand upon the idea that the money was paid on the day of the sale, or at least before the 28th day of May, and the return made afterwards was dated to fit the facts.   But the defendant Brandreth files the affidavit of Sheriff Davidson, dated the 4th day of December, 1895, in which he says that he has not paid out his money on the Dysart claim—that after being

served with the order of the judge he held the money to be applied as the court might direct.

So, this affidavit knocks up the theory by which we would have been disposed to reconcile the making the return some weeks after court with the affidavit of J. W. Cooper. It may be that neither Cooper's affidavit nor Sheriff Davidson's affidavit is true. But it is certain that both cannot be true. One of the affiants is an important public officer whose official acts imply verity, and the other affiant is a member of the bar where honor and integrity are usually held in the highest appreciation. It is stated in the affidavits that this money had been receipted for by Cooper. He was the attorney of Dysart and of Davidson in this matter, and, it would seem, must have been cognizant of the facts. This return will be stricken from the files of the court, so far as it purports to apply the money.

Having disposed of this preliminary motion, we now proceed to consider the case on appeal with the sheriff's return, so far as it professes to apply the money, eliminated from the record, treating the case as if the money was now in the hands of the sheriff.

On the 20th of June, 1891, M. L. Mauney recovered three judgments against the defendant Brandreth before a justice of the peace, amounting to something less than four hundred dollars, which were docketed in the office of the clerk of the superior court the same day (20th), On the 20th of June R. A. Akin recovered three judgments against the defendant Brandreth before a justice of the peace for something over three hundred dollars, and these judgments were duly docketed in said office) on the 22d of June, 1891. On the 20th of June, 1891, Black & Moore recovered a judgment ag inst defendant Brandreth before a justice of the peace for $181.28 and costs, which was duly docketed in said office on the 22d of June, 1891. The defendant

Brandreth appealed to the superior court in all of these cases, and in order to stay execution during the pendency of the appeal entered into bond to that effect with A. L. Cooper as his surety. At July special term, 1893, of Cherokee superior court, these cases were tried on the appeals—the three cases of Mauney being consolidated by order of court and tried as one case, and the three cases of Aiken being also consolidated by order of court and tried as one case. And the plaintiffs each recovered judgment for the amounts recovered before the justice of the peace, and interest and costs, except the plaintiffs Black & Moore, whose judgment, it is alleged by respondents, was a little more than they recovered below, which seems to be the accrued interest and costs. These last-named judgments were also docketed in the clerk's office, as the law provides and requires. But at spring term, 1892, of said court, W. W. Dysart recovered a judgment against the defendant Brandreth for $1,219.91 and costs, which was duly docketed. It also appears that there were a number of other judgments taken against the defendant Brandreth and duly docketed in the clerk's office. And the sheriff returns that at the time of the sale, on the 22d of May, 1895, he had in his hands executions against the defendant Brandreth in favor of W. W. Dysart, R. A. Akin, M. L. Mauney, Black & Moore, Farmer & Farmer, Thomas Odell and The State *v.* defendant Brandreth. The executions in favor of R. A. Akin, W. L. Mauney, and Black & Moore were issued on the judgments recovered at July special term, 1893; that no executions were ever issued on the justice's judgments of June, 1891, and docketed as above stated, and that he had no execution in his hands at the time of sale, issued upon these judgments.

A justice's judgment, when duly docketed in the office of the clerk of the superior court, becomes a judgment of

the superior court to all intents and purposes. *Cannon* v. *Parker*, 81 N. C., 320 ; *Adams* v. *Guy*, 106 N. C., 275. And it becomes a lien on all the real estate of the defendant in the county where it is docketed, which continues for ten years from the date of docketing. *Cannon* v. *Parker*, *supra* ; *Murchison* v. *Williams*, 71 N. C., 135.

The fact that defendant appealed from the judgment of the justice of the peace, and gave security to stay execution, did not deprive the plaintiff of the right to have the judgment docketed, nor did it take away the lien of the judgment. This is created by law upon the docketing of the judgment. This being so, the judgment of Mauney having been docketed on the 20th of June, 1891, was the oldest lien, and the judgments of Akin and Black & Moore, both having been docketed on the 22d of June, 1891, were next and equal in priority, having been docketed on the same day.

But, as there was no execution issued and in the hands of the sheriff at the time of the sale, he could not sell under these judgments, nor can he apply any part of the proceeds of the sale to the satisfaction of these judgments. *Titman* v. *Rhyne*, 89 N. C., 64 ; *Motz* v. *Stowe*, 83 N. C., 434 ; *Burton* v. *Spiers*, 92 N. C., 503. Where a sheriff makes a sale of land under execution, the law applies the money first to the satisfaction of the execution issuing on the oldest judgment lien in his hands at the time of the sale. *Motz* v. *Stowe*, *supra* ; *Henry* v. *Rich*, 64 N. C., 379, and cases cited in the brief of Phillips & Merrimon. And if he fails to so appropriate it, as the law applies it, he commits a breach of his trust for which he and his sureties are liable. *Henry* v. *Rich* and *Motz* v. *Stowe*, *supra*; *Titman* v. *Rhyne*, 89 N. C., 64. He need not have advertised under a judgment, if he has given the requisite notice under other executions in his hands. It

is sufficient that he had the execution in his hands at the time of sale. This he must have to entitle the judgment to any portion of the proceeds of the sale. *Motz* v. *Stowe, supra,* and authorities there cited. If he has execution in his hands, issuing from any proper judgment, it authorizes him to sell. And if the execution issues upon the judgment having the oldest lien, the purchaser takes the land discharged of any subsequent judgment lien. And if there is a surplus left in his hands after satisfying the execution issuing on the judgment having the oldest lien, then he should apply it to the oldest lien where he has the execution in his hands at the date of sale, and so on. *Sharpe* v. *Williams,* 76 N. C., 87. But where he sells under a junior judgment, or junior judgments, having no execution in his hands issuing on the older judgments, as in this case, the purchaser takes the title of the defendant in the execution, subject to the liens of the older judgments. *Cannon* v. *Parker, supra.*

So, we see that the sheriff must apply the money raised from the sale of defendant's land on the 22nd of May, 1895, to the payment or satisfaction of the executions in his hands at the time of sale, according to their priority. The purchaser at said sale takes the title of defendant Branderth, subject to the payment of the judgments of Akin, Mauney and Black & Moore, taken before the justice of the peace and docketed in June, 1891. If said purchasers voluntarily satisfy these judgments (as we suppose there are no others older than these) they will then have a clear title. Or, if these older judgments can be satisfied out of other property of the defendant (as counsel for Dysart suggests that he has other property subject to sale, and not sold) then the purchasers will have a clear title. But if neither of these things is done, it will be the duty of the plaintiffs in these older judgments to cause

execution to issue thereon and have this property (sold on the 22nd of May, 1895) resold, at which sale the purchaser will get the title against the defendant and the purchasers at the sale in May, 1895. This must be before the defendant's homestead can be sold under the deed of trust to secure A. L. Cooper, as defendant's surety on the appeals.

It is contended by counsel for Dysart that the justice's judgments, so docketed, are dormant, no executions having issued on them. But this is not the case, as executions on these judgments were stayed pending the appeal, and this prevents the statute from running. *Adams* v. *Guy, supra.* There is error in the judgment of the court below. Let this be certified.                                   Error.